Argued April 1, affirmed September 5, 1968

## KLAMATH PRODUCTION CREDIT ASSOCIATION, *Respondent, v.* STATE TAX COMMISSION, *Appellant.*

444 P. 2d 923

*Gerald F. Bartz,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Alfred B. Thomas, Assistant Attorney General, Salem.

*Thomas S. Moore* and *Ralph R. Bailey,* Portland, argued the cause for respondent. With them on the brief were Morrison & Bailey, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

This appeal by the State Tax Commission from a decree of the Oregon Tax Court involves the right of the plaintiff to apportion its income between Oregon and California, in both of which states it is engaged in business. The issue involved here is also involved in *Equitable Savings & Loan Association v. State Tax Commission,* 251 Or 70, 444 P2d 916, decided this day.

We adopt the following statement of facts from the opinion of the Oregon Tax Court, 3 OTR Adv Sh 23:

"The Klamath Production Credit Association is a financial institution engaged in making agricultural loans in Klamath and Lake Counties in Oregon and Siskiyou and parts of Modoc Counties in northern California.

"The main office of the company in Klamath Falls employs about six persons including a fieldman who, during the times involved, spent part of his time in the Yreka, California area.

"Most of the loan applications from ranchers in the Doris and Tulelake areas are made and closed at the Klamath Falls office. All accounting records are maintained at Klamath Falls.

"In the Yreka area, because of its distance from Klamath Falls, most of the loans are solicited by the fieldman working in California. The prospective borrowers execute a loan application, a financial statement, a budget, and supply certain credit information. The fieldman makes an inspection of the applicant's ranch, checks the livestock, machinery, etc., and fills out a report. These are sent to the Klamath Falls office. If the loan is approved by the loan committee, which meets once each week in Klamath Falls, a note and security agreement are prepared. These documents are signed and recorded in California and returned to the Klamath Falls office. The note and mortgage are assigned to the Federal Intermediate Credit Bank in Spokane

which provides the funds for the Klamath Falls office to loan to the borrowers.

"During the tax years involved the fieldman from Klamath Falls spent two days every two weeks in the Yreka area. An office was maintained in Yreka with a sign on the outside of the building. The office consisted of a separate room, a telephone and the use of a lobby. In addition to soliciting loans and assisting with the preparation of the applications the fieldman made some collections which he mailed or carried to the Klamath Falls office. No records were maintained in the Yreka office. During the absence of the fieldman one of the employees of the Federal Land Bank in the same office would answer the phone and forward to Klamath Falls any mortgage payments received in the Yreka office. For these services he was paid $100 per year by the Klamath Production Credit Association.

"After the loan was made it was the practice of the fieldman to call on the rancher-borrower once each summer to check on crops, give advice and make collections. On occasions the loan committee from Klamath Falls would visit the rancher."

In this case the commission has stipulated that plaintiff was doing business in California, was a unitary corporation, and was entitled to apportion its income under ORS 314.280 and its Reg. 4.280. The regulation allows a financial institution to apportion its income by giving equal weight to three factors, i.e., payroll, loans and interest. There is no dispute in this case about the payroll factor. The issue is narrowed to the application of the factors of loans and interest in apportioning plaintiff's income.

ORS 314.280 requires that the unitary income be apportioned "so as fairly and accurately to reflect the net income of the business done within the state," and again, so as "to allocate to the State of Oregon on a fair and equitable basis a proportion of such income

earned from sources both within and without the state." Pursuant to the statute the commission adopted Reg. 4.280 (now Reg. 314.280). This regulation provides that for corporations in general the unitary income should be apportioned "by giving equal weight to three factors, i.e., 'property,' 'wages,' and 'sales.' " The regulation further provides that if substantially all of the income of a financial institution is in the form of interest, the factor of gross loans is substituted in the formula for the average value of real and tangible personal property, and that the factor of gross interest collected is substituted in the formula for sales.

As in *Equitable Savings & Loan Association v. State Tax Commission*, supra, the commission, in spite of the mandate of the statute and the plain meaning of its regulation pertaining to financial institutions, now contends that all of plaintiff's income should be allocated to Oregon. The commission's argument in this case is the same as it advanced in *Equitable Savings & Loan Association*, and our decision in that case is controlling here.

The decree of the tax court is affirmed.